**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERESA HARRELL** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-2359** |
| | : | |
| **CARRINGTON MORTGAGE** | : | |
| **SERVICES, LLC**, *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                      **June 22, 2020**

A Florida borrower upset with her mortgage lenders filing an erroneous proof of claim in her bankruptcy pending in the Middle District of Florida turned and sued those creditors in the Philadelphia state court before they amended their proof of claim.  The mortgage creditors removed the state court case here arguing a nexus to the ongoing Florida bankruptcy case and then moved to transfer to the Florida federal courts.  The Florida borrower objects to transfer and moves to remand the case to the Philadelphia state court arguing the mortgage creditors removed too late. The Florida borrower admitted she failed to properly serve until late April 2020; removal on May 20, 2020 is timely. We agree with the mortgage creditors, deny remand, and transfer to the United States Bankruptcy Court for the Middle District of Florida to address whether the bankruptcy court should abstain or proceed as part of its supervision of the post-confirmation plan.

## I.      Background

Teresa Harrell purchased a home in Philadelphia in 1992.[1]  She used it for a time as her primary residence, but currently resides in Jacksonville, Florida.[2]  Her daughter and her daughter's family now use the Philadelphia property as their primary residence.[3]

In 2006, Ms. Harrell borrowed money secured by a $76,000 mortgage on the Philadelphia property from Freemont Investment and Loan.[4]  On August 20, 2010, Wells Fargo Bank, N.A. took over the loan and succeeded to the rights on the mortgage.[5]  Wells Fargo delegated servicing the loan to Carrington Mortgage Services, LLC.[6]  Carrington then acted as the disclosed agent of Wells Fargo.[7]  In 2015, Ms. Harrell and Carrington signed a Home Affordable Modification Agreement for the Philadelphia property.[8]

### Ms. Harrell's first state court case

As disputed by the parties from Fall 2015 into 2016, Ms. Harrell either fell behind on payments on the Philadelphia mortgage, or Carrington misapplied payments intended for the Philadelphia property to a Florida mortgage also serviced by Carrington.[9]  Carrington sued to foreclose on the Philadelphia property in the Court of Common Pleas of Philadelphia County in 2017.[10]  Ms. Harrell raised an affirmative defense in Carrington's foreclosure lawsuit and brought her own claim in 2018; in the affirmative defense and the lawsuit, Ms. Harrell alleged Carrington misapplied payments to the incorrect mortgage loan and ignored her attempts to direct the payments to the correct loan.[11]  Before trial, Ms. Harrell and Carrington agreed to settle both the original foreclosure action and Ms. Harrell's separate claim.[12]  They agreed Ms. Harrell could reinstate the loan by January 15, 2019 if she so chose, and "[a]ll fees and costs, other than the principle [sic], interest, taxes, and insurances would be waived."[13]  Ms. Harrell dropped her counterclaim against Carrington, and Carrington agreed to pay her $3,500 in legal fees.[14]  Carrington also agreed even if Ms. Harrell didn't reinstate the loan by January 15, 2019, it would still waive the challenged fees.[15]

Carrington never removed the fees and costs from the Ms. Harrell's account. It continued seeking the disputed fees[16] and never paid Ms. Harrell $3,500 for legal fees.[17]

***Ms. Harrell files bankruptcy in Florida***[18]

On July 2, 2019, Ms. Harrell petitioned for relief under Chapter 13 of the Bankruptcy Code in her home district of the United States Bankruptcy Court for the Middle District of Florida.[19] Wells Fargo Bank asserted four secured claims against Ms. Harrell's properties.[20]  For one of those four claims, Wells Fargo filed a proof of claim evidencing a mortgage debt inclusive of the disputed fees previously resolved in the Court of Common Pleas.[21]  On December 15, 2019, Ms. Harrell objected to the proof of claim, arguing Wells Fargo overstated arrears by $10,467.16, a reference to the 2018 settlement agreement.[22]  Defendants resolved the objection on January 17, 2020 by amending the proof of claim, reducing the debt's principal from $123,727.27 to $113,260.11, and reducing the arrears from $39,318.25 to $28,851.09.[23] Ms. Harrell withdrew the claim objection on March 3, 2020, and the Bankruptcy Court confirmed Ms. Harrell's reorganization plan on April 8, 2020.[24]  Ms. Harrell is under a "continuing duty to disclose any changes in financial circumstances and new assets or potential rights to assets [she] acquires post-petition by promptly filing amended schedules with the Court."[25]

***Ms. Harrell's second state court case***[26]

Four days before objecting to the proof of claim in Florida and before Defendants could amend their proof of claim, Ms. Harrell sued Carrington Mortgage Services, LLC and Wells Fargo Bank back here in Philadelphia.[27]  She then needed to effect service.

Ms. Harrell attempted to serve process on Carrington on December 13, 2019 by mail.[28] Ms. Harrell's counsel never received the return receipt.  A lawyer emailed Ms. Harrell's lawyer on December 30, 2019 saying Defendants retained him to defend the case, and he knew a response from Carrington due by January 6, 2020, and a response from an improperly named "Wells entity"

due January 20, 2020.[29]   He then requested multiple extensions to respond,[30] and Ms. Harrell reinstated the claim in state court in April 2020.[31]

Ms. Harrell adduced no evidence as to when she properly served Wells Fargo.  On March 27, 2020, Ms. Harrell's lawyer admitted he had not yet served original process.  He then asked Carrington's and Wells Fargo's lawyer to accept service by affidavit in lieu of personal service to avoid additional costs.[32]  Defendants' lawyer, Stuart Seiden, signed the "Acceptance of Service" on April 30, 2020 confirming effective service.[33]  Ms. Harrell adduced no evidence as to what defect in service led counsel for Ms. Harrell to admit service had not been properly effected on the parties.[34]

On May 20, 2020, both defendants removed from state court. [35] Ms. Harrell seeks less than $75,000 from Carrington and Wells Fargo for allegedly violating the Fair Credit Extension Uniformity Act and the Unfair Trade Practices and Consumer Protection Law by filing an improper proof of claim with fees in her bankruptcy case in Florida.[36]  She also claims Carrington breached the 2018 settlement agreement.[37]  The bankruptcy court included this case in the approved Chapter 13 plan, and the bankruptcy trustee will distribute net recovery to creditors.[38]

## II.    Analysis

Ms. Harrell now moves to remand to the state court arguing either untimely removal or the matter is not a core proceeding and therefore we lack jurisdiction over the claims. Alternatively, Ms. Harrell asks we exercise our equitable authority to abstain and remand on such basis.[39] Defendants simultaneously move to transfer to the United States District Court or Bankruptcy Court for the Middle District of Florida and Ms. Harrell opposes.[40]  Both parties agree this Court is not the appropriate forum.  We also agree.  The question is whether to remand or transfer.  We find removal is timely, deny remand based on improper removal procedure or lack of jurisdiction,

and transfer to the United States Bankruptcy Court for the Middle District of Florida to decide whether it should abstain or consider equitable remand.

### A.     We deny remand as removal is timely.

Ms. Harrell moves for remand arguing Defendants' removal is untimely. Defendants argue they timely removed because Ms. Harrell did not effect service until April 30, 2020 and they removed on May 20, 2020. We agree with Defendants.

We look to the applicable federal laws to determine if removal is timely. Congress provides a mechanism for a party to remove state court cases related to a bankruptcy case to federal court.[41] Federal Rule of Bankruptcy 9027 sets the time limits for removal, and if a state court action is filed after a pending bankruptcy matter "a notice of removal may be filed with the clerk only within the shorter of (A) 30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed, or (B) 30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons."[42] Although the "service or otherwise" language of the statute suggests mere awareness of a lawsuit might start the clock running on the removal window, in *Murphy Bros.* the Supreme Court interpreted identical "service or otherwise" language in section 1446 to mean only a proper service of process under applicable law or rules.[43]

Ms. Harrell argues we should find the removal untimely as falling outside of the thirty day period to remove under Federal Rule of Bankruptcy Procedure 9027[44] because she first served process on Carrington in December 2019.[45] Defendants argue Ms. Harrell did not properly effect until April 30, 2020. Under the Pennsylvania Rules of Civil Procedure, service of process on out-of-state defendants by mail requires a signed receipt.[46] Ms. Harrell allegedly sent the service of process in December 2019 by first class mail, return receipt requested.[47] Ms. Harrell's lawyer

5

never received the return receipt, but Defendants arguably knew of the lawsuit as evidenced by a December 30, 2019 email from their lawyer to Ms. Harrell's lawyer.[48]  The Defendants' lawyer admitted being retained to defend the case and knowing Carrington owed a response by January 6, 2020, and needing to file a response from an improperly named "Wells entity" by January 20, 2020.[49]

But Ms. Harrell adduced no evidence as to when she properly served Wells Fargo.[50]  On March 27, 2020, Ms. Harrell's lawyer admitted he had not yet served original process and asked Carrington's and Wells Fargo's lawyer to accept service by affidavit in lieu of personal service to avoid additional costs.[51]  The Defendants' lawyer signed the "Acceptance of Service" on April 30, 2020 confirming effective service.[52]  Ms. Harrell adduced no evidence as to what defect in service led her lawyer to admit service had not been properly effected on the parties.  Ms. Harrell elected not to respond to Defendants' June 12, 2020 memorandum which represents she never attempted to serve process on Wells Fargo Bank, N.A., and did not properly effect service until April 30, 2020.[53]  On May 20, 2020, both Defendants timely removed from state court.[54]

Defendants remove under section 1452 for removal of claims "related to bankruptcy cases" from state to federal court.[55]  Section 1452 works in conjunction with Rule 9027 of the Federal Rules of Bankruptcy Procedure, and requires a civil action initiated after the commencement of the case under the bankruptcy code must be removed to the "district and division within which is located the state or federal court where the civil action is pending."[56]  Ms. Harrell first brought this action in the Court of Common Pleas of Philadelphia and we are the proper forum upon removal subject to transfer.

### B.    Transfer to the ongoing bankruptcy case is proper for further rulings.

As removal is timely and proper to our Court, we must then, for purposes of Defendant's motion to transfer, determine if United States Bankruptcy Court for the Middle District of Florida may exercise jurisdiction over the claims in Ms. Harrell's state court lawsuit.  If so, we will transfer to the United States Bankruptcy Court for the Middle District of Florida to rule on abstention and the motion to remand under section 1452: this case involves the sensitive question of post-confirmation bankruptcy court jurisdiction over an adversary proceeding, and the Bankruptcy Court for the Middle District of Florida has the greatest familiarity with the issues raised by the motion.[57] "The weight of authority provide that[,] where a . . . court is simultaneously confronted with (1) a Motion, pursuant to 28 U.S.C. § 1412, to transfer or change the venue of an action which has been removed to it pursuant to 28 U.S.C. § 1452(a); and (2) a Motion to remand or otherwise abstain from hearing the change of venue action, pursuant to 28 U.S.C. § 1334(c), the action should be transferred to the 'home' court of the bankruptcy to decide the issue of whether to remand or abstain from hearing the action."[58]

### 1.    The bankruptcy court enjoys jurisdiction.

Congress designed the bankruptcy system to promote a goal of resolving all of the debtor's affairs in a single forum.[59]  We have "original and exclusive jurisdiction of all cases under title 11,"[60] and bankruptcy courts have the ability to hear cases in bankruptcy and related matters by power referred from the district courts.[61]  This statutory scheme bestows upon bankruptcy judges power they do not otherwise possess under Article III of the United States Constitution.[62]  We have the power to withdraw a proceeding from the bankruptcy court "for cause shown,"[63] but by and large bankruptcy courts hear bankruptcy cases.[64]

The jurisdiction of bankruptcy courts extends to four broad categories: "(1) cases under title 11, (2) proceeding[s] arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11."[65]  We refer to cases falling within the first three broad categories as "core" proceedings; proceedings "related to" a case under title 11 "are referred to as non-core proceedings."[66]  "Bankruptcy judges may hear and enter final judgments in all core proceedings arising under title 11, or arising in a case under title 11."[67]  Congress non-exhaustively listed sixteen types of matters it considered core, including "counterclaims by [a debtor's] estate against persons filing claims against the estate."[68]

Non-core "proceedings 'related to' title 11 case include causes of action owned by the debtor that become property of the bankruptcy estate under 11 U.S.C. § 541(a), as well as suits between third parties that conceivably may have an effect on the bankruptcy estate."[69]  In *Stern v. Marshall*, the Supreme Court held Article III prevents bankruptcy courts from entering final judgment on claims which would "exis[t] without regard to any bankruptcy proceeding."[70]  A few years later in *Wellness Int'l Network, Ltd. v. Sharif*, the Supreme Court held so long as consent is "knowing and voluntary," bankruptcy courts do not violate Article III by resolving the claim.[71]  When a bankruptcy judge determines a matter "is not a core proceeding but . . . is otherwise related to a case under title 11," and the parties do not consent to bankruptcy court, the judge then has the ability to "submit proposed findings of fact and conclusions of law to the district court."[72]

### i.    Ms. Harrell's Fair Credit Extension Uniformity Act and Unfair Trade Practices and Consumer Protection Law claims are core claims.

Ms. Harrell claims her causes of action do not qualify as core proceedings, and Defendants claim they do.  We agree with Defendants.  Ms. Harrell's claims under the Fair Credit Extension Uniformity Act and the Unfair Trade Practices and Consumer Protection Law arose in the proof

of claim process within the bankruptcy case, which squares with the "arising in a case under title 11" language of section 157.[73]  Ms. Harrell argues Wells Fargo's submitting an inflated claim in the Florida bankruptcy case caused her to incur needless litigation fees in filing an objection.[74] Ms. Harrell admits her Pennsylvania Fair Credit Extension Uniformity Act and Unfair Trade Practices and Consumer Protection Law claims arose entirely after her bankruptcy, and since she does not claim Defendants violated the automatic stay or unlawfully engaged in collection activity outside of Wells Fargo's filing the proof of claim, her claim relates only to the contested proof of claim, and could not exist without the bankruptcy proceeding.[75]

Ms. Harrell offers caselaw to suggest bankruptcy courts generally decline to exercise jurisdiction over claims arising post-petition under the Fair Debt Collection Practices Act, which is the federal parallel to the Pennsylvania Fair Credit Extension Uniformity Act.[76]  Bankruptcy courts decline to exercise jurisdiction for cases of unfair debt collection practices which could exist outside of bankruptcy,[77] but routinely hear claims filed under the Fair Debt Collection Practices Act for improper proof of claim submission in bankruptcy cases.[78]  For example, in *In re Bernadin*, a Chapter 13 debtor filed a complaint against a creditor under the Fair Debt Collection Practices Act for knowingly filing an inaccurate proof of claim.[79]  The bankruptcy court held debtors could bring claims under the Fair Debt Collection Practices Act for filing of improper proofs of claim, and the bankruptcy court could decide the matter.[80]

Ms. Harrell contends in listing the net proceeds of the lawsuit in the bankruptcy plan, the bankruptcy court indicated they did not consider the subject of the litigation to be a core matter.[81] We decline to draw such an inference without evidence. Ms. Harrell's claims arising from the proof of claim are core proceedings.  We must transfer the action to the bankruptcy court to allow it to decide abstention and the motion to remand based on grounds other than untimeliness.[82]

ii.    **Ms. Harrell's breach of contract claim can be heard in the bankruptcy court.**

Ms. Harrell argues the bankruptcy court cannot hear her breach of contract claim and Defendants argue it can. We agree with Defendants.

Ms. Harrell's claim for breach of contract based upon Carrington breaching the 2018 settlement agreement arose outside of bankruptcy, but the net proceeds of the claim are listed in the plan confirmation as property of the estate for the benefit of creditors.[83] "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law," and whether a matter is designated as core or non-core is left to the discretion of experienced bankruptcy judges.[84] After hearing the motion to remand, should the bankruptcy court decide to hear the matter they can either (1) adjudicate the matter regardless with the consent of the parties,[85] or (2) submit findings of fact and conclusions of law to the district court for a final judgment.[86]

iii.    **Bankruptcy courts retain post-confirmation jurisdiction over all matters "relating to" the bankruptcy case with a close nexus to the confirmed plan.**

We must now determine whether the bankruptcy court can exercise jurisdiction over the matter when the bankruptcy plan has already been confirmed. Ms. Harrell argues the Florida bankruptcy court does not have jurisdiction over post-confirmation proceedings, and Defendants argue the court does. We agree with Defendants.

A bankruptcy court's jurisdiction may change depending on the stage of a particular proceeding.[87] Our Court of Appeals in *In re Resorts International* announced the standard for determining whether post-confirmation jurisdiction exists over a proceeding: "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter . . . [m]atters that affect the interpretation,

implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus."[88]

Ms. Harrell's Fair Credit Extension Uniformity Act and Unfair Trade Practices and Consumer Protection Law claims arose entirely from alleged improper behavior in the bankruptcy case, and the trustee will pay net proceeds into the bankruptcy estate; this claim passes the "close nexus" test. Bankruptcy courts specifically exercise jurisdiction over post-confirmation adversary proceedings objecting to a proof of claim in bankruptcy.[89] Ms. Harrell's claims relating to the proof of claim in her bankruptcy case fall under the bankruptcy court's post-confirmation jurisdiction.

Ms. Harrell's breach of contract claim passes the "close nexus" test and is related to the bankruptcy case because the net proceeds of the action will immediately become the property of the estate.[90]

The United States Bankruptcy Court for the Middle District of Florida would be the most appropriate forum to decide whether the bankruptcy court ought to abstain from hearing these claims post-confirmation. Judge Funk already presided over the proof of claim objection in Florida and is best acquainted with the practices of post-confirmation bankruptcy court jurisdiction over an adversary proceeding in its District.[91]

C.      We refer the abstention issues to the Bankruptcy Court.

Having found timely removal, we generally then ask whether we must abstain. Congress fashioned two types of abstention courts must consider: mandatory abstention under section 1334(c)(2), and permissive abstention under section 1334(c)(1).[92] We decline to decide as to either manner of abstention.

Consistent with the weight of authority in our Circuit, and absent apparent jurisdictional issues regarding the bankruptcy court's ability to hear Ms. Harrell's lawsuit, we instead transfer the matter to the United States Bankruptcy Court for the Middle District of Florida for their decision on abstention.[93]  This case involves the sensitive question of post-confirmation bankruptcy court jurisdiction over an adversary proceeding, and the bankruptcy court is better acquainted with the matter.[94]

### D.     The private and public factors favor transfer to the United States Bankruptcy Court for Middle District of Florida.

Having sorted threshold issues concerning timely removal and deference to the bankruptcy court to resolve abstention and further substantive issues arising under the confirmed plan, we now must determine whether transfer to the United States Bankruptcy Court for the Middle District of Florida is proper. We will first decide whether we transfer under section 1404 or section 1412.

Through the traditional transfer provision for civil action, section 1404, Congress permits transfer of a case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented."[95]  We will analyze "[f]or the convenience of parties and witnesses, in the interest of justice" below, and here only focus on where the lawsuit might have been brought and where the parties have consented.

Under the bankruptcy venue statute for proceedings "under title 11 or arising in or related to cases under title 11," section 1409, venue is proper "in the district court in which such case is pending."[96]  Under section 157(a) and the Middle District of Florida standing order referring bankruptcy matters to the bankruptcy courts, the action could have been brought in the United States Bankruptcy Court for the Middle District of Florida.[97]  As discussed above, Ms. Harrell's claims relating to the proof of claim arose in her bankruptcy case and the net proceeds from her

claims for breach of contract are listed as property of the bankruptcy estate, so both claims are sufficiently related to the bankruptcy proceeding to be governed by sections 1409 and 157, and properly could have been brought in the United States Bankruptcy Court for the Middle District of Florida.

By choosing to file her bankruptcy case in the United States Bankruptcy Court for the Middle District of Florida, Ms. Harrell submitted to its jurisdiction for all matters relating to the bankruptcy case[98] and cannot object to the court hearing claims which arose during her bankruptcy proceedings.[99]  The Defendants also consent to the bankruptcy court's jurisdiction to enter final judgment.[100]

Whether under a venue "where the [action] might have been brought" theory or a consent theory, we have statutory authority to transfer to the United States Bankruptcy Court for the Middle District of Florida.[101]

Under section 1412, "a district court may transfer a case or proceeding under Title 11 to a district court for another district, in the interest of justice or for the convenience of the parties," and courts have interpreted "under Title 11" in section 1412 broadly, including cases related to the bankruptcy proceeding.[102] Although the statutory language of section 1412 speaks of transferring to a district court, courts have applied this section to effect transfer of cases directly from a district court to a bankruptcy court.[103]  While the result is efficient, the plain text of the statute requires a transfer under section 1412 be submitted first to the local district court for subsequent submission to the bankruptcy court.[104]  But the language of 1404 does not limit transfer to district courts.[105] As we believe the proper forum to hear the claims is the United States Bankruptcy Court for the Middle District of Florida, in the interest of efficiency we transfer the action directly to the bankruptcy court under section 1404.[106]

We now look to the factors our Court of Appeals in *Jumara* suggests to determine the appropriateness of a venue transfer under section 1404.[107]   While there is no exclusive or exhaustive list of factors which must be considered, there are a number of judicially established points to weigh.[108]   The burden of establishing the need for the transfer rests with Defendants. Defendants proffer adequate support for a transfer to the Bankruptcy Court for the Middle District of Florida.[109]

### 1.    Private factors favor transfer to the bankruptcy court.

Private interests include: "the plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records."[110]

Ms. Harrell's forum preference is manifested in her original choice of the Court of Common Pleas of Philadelphia.  This choice deserves deference,[111] but it is not dispositive.[112] "When a plaintiff brings its charges in a venue that is not its home forum . . . that choice of forum is entitled to less deference."[113]   Ms. Harrell has lived in Florida for years and just filed for bankruptcy there.

Defendants prefer transfer to the United States Bankruptcy Court for the Middle District of Florida, as manifested by their motion to transfer.[114]

The Fair Credit Extension Uniformity Act and Unfair Trade Practices and Consumer Protection Law claims arose primarily from a disagreement over the proof of claim in Ms. Harrell's bankruptcy case in Florida, and for those claims this factor weighs in favor of transfer.[115]   The breach of contract claim involves a Pennsylvania case but the parties are not in Pennsylvania and

choice of law may not be clear. Either venue will be faced with the same choice of law questions, but the bankruptcy court will have to hear much, if not all, of the same evidence in the parallel matter over which they have core proceeding jurisdiction.

The convenience of the parties also weighs heavily towards transfer, as Ms. Harrell lives in Florida where the Defendants are already participating in the bankruptcy case.[116]

Witnesses would reside in both Pennsylvania and Florida, so this factor is neutral. The location of records lie primarily in the bankruptcy court.

The private factors favor transfer to Florida.

## 2. Public factors favor transfer to the bankruptcy court.

Public interests considered are: "the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases."[117]

Judgments in the Bankruptcy Court for the Middle District of Florida are enforceable as to matters arising in a case under title 11.[118] Confirming a bankruptcy plan does not end the bankruptcy court's ability to hear core and non-core matters.[119]

The bulk of the evidence in the case either has already been heard by the bankruptcy court during the claim dispute, or resides in the court, and the net proceeds of the litigation would be paid directly into the bankruptcy estate: the bankruptcy court hearing the case is the most practical and efficient outcome. The "judicial economy to be achieved in having the entire controversy decided in one forum . . . the bankruptcy court which is already administering the [bankruptcy case]" acts as an "overwhelmingly significant factor, outweighing all others . . . ."[120] If the case

is remanded to the Court of Common Pleas and proceeds to arbitration in state court, an arbitrator will request all documents regarding the proof of claim from the bankruptcy court, and then explore a proper proof of claim.

There is already a bankruptcy proceeding underway in the Bankruptcy Court for the Middle District of Florida, and the bankruptcy court continues to be in control of the administration of the confirmed Chapter 13 plan.[121]  By allowing Ms. Harrell to sue in the Court of Common Pleas of Philadelphia County, we are approving a second case on the same issue.  None of the parties presented information regarding relative docket congestion.

Because the actions underlying the lawsuit occurred in the bankruptcy court, there is an overwhelming local interest on the part of the bankruptcy court in hearing the case in the forum. The 2018 lawsuit and the related breach of contract claim began over a mortgage attached to property in Philadelphia. But Ms. Harrell insists the other half of her current cause of action arose entirely from the Defendants' improper filing of a proof of claim in bankruptcy.[122]  As noted above, an arbitrator sitting in Philadelphia is not the best equipped decisionmaker for a lawsuit predicated upon an improper proof of claim filed in a Florida bankruptcy.

"[A] mere browse through the complex, detailed, and comprehensive provisions of the lengthy Bankruptcy Code . . . demonstrates Congress's intent to create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike."[123]  This matter primarily arose in the bankruptcy court proceeding, and the net proceeds of the action will be paid directly into the estate: it is in the strong interest of the public policies underlying the United States Bankruptcy Code to join this action to the larger bankruptcy case.[124]

The bankruptcy court is familiar with the substantive law, as Pennsylvania Fair Credit Extension Uniformity Act statute mirrors the federal Fair Debt Collection Practices Act,[125] and the Bankruptcy Court for the Middle District of Florida regularly presides over litigation under such statutes.[126]   Bankruptcy courts preside over breach of contract claims frequently.[127]   The bankruptcy court's familiarity with the matters and substantive law favor transfer to the bankruptcy forum.

Taken as a whole, the public factors favor transfer, and the combined private and public factors weigh heavily towards transfer to the United States Bankruptcy Court for the Middle District of Florida.

## III.   Conclusion

Ms. Harrell's claims for improper debt collection arose from her challenging Wells Fargo's proof of claim in her bankruptcy case, which is a matter "arising in" a title 11 case. Those claims are a core matter falling under the jurisdiction of the bankruptcy court. Whether the breach of contract claim is a core proceeding is less clear, but the bankruptcy court has the discretion to decide whether it qualifies as core: should it decide it is non-core, the court can still hear the claims together and then submit the individual contract claim with findings of law and fact to the district court for a final judgment mindful Defendants already consented to entry of final judgment by the bankruptcy court. Removal is proper under Federal Rule of Bankruptcy Procedure 9027 and sections 157 and 1334, and we need not decide whether abstention is appropriate. Transfer to the bankruptcy court is proper under section 1404. The public and private factors both weigh heavily in favor of transferring to the United States Bankruptcy Court for the Middle District of Florida. We transfer the case.

---

[1] ECF Doc. No. 1-1, at ¶ 2-3.

[2] *Id.*, at ¶ 3; ECF Doc. No. 6-16, at p. 12.

[3] ECF Doc. No. 1-1, at ¶ 3.

[4] *Id.*, at ¶ 4.

[5] *Id.*, at ¶ 7.

[6] *Id.*, at ¶ 8.

[7] *Id.*, at ¶ 8-9. Carrington serviced both Ms. Harrell's mortgage on the Philadelphia home and the mortgage on her Florida home.

[8] ECF Doc. No 6-1, at p. 2.

[9] ECF Doc. No 6-12, at ¶ 8-9; ECF Doc. No 6-1, at p. 3.

[10] ECF Doc No. 1-1, at ¶ 10.

[11] *Id.*, at ¶ 12.

[12] *Id.*, at ¶ 14.

[13] *Id.*, at ¶ 15.

[14] *Id.*, at ¶ 16.

[15] *Id.*, at ¶ 17.

[16] *Id.*, at ¶ 19.

[17] *Id.*, at ¶ 20.

[18] *In re McCormick*, No. 1902497 (Bankr. M.D. Fla. Jul 02, 2019).

[19] ECF Doc. No. 5-1, at p. 7; ECF Doc. No. 6-16, at p. 12 (using the pagination assigned by the CM/ECF docketing system).

[20] ECF Doc. No. 6-16, at p. 11-12 (using the pagination assigned by the CM/ECF docketing system).

[21] ECF Doc. No. 5-1, at p. 8.

[22] *Id.*

[23] *Id.*

[24] ECF Doc. No. 6-16, at p. 12 (using the pagination assigned by the CM/ECF docketing system).

[25] *Id.*, at ¶ 28.

[26] ECF Doc. No 1-1, at ¶ 22.

[27] ECF Doc. No. 1-2.

[28] ECF Doc. 6-17.

[29] *Id.* As the time to respond to a complaint under the Pennsylvania Rules of Civil Procedure is twenty days, Pa. R.C.P. No. 1026, this places service on or around December 17, 2019.

[30] ECF Doc. No. 6-18, at p. 4 (using the pagination assigned by the CM/ECF docketing system).

[31] ECF Doc. No. 1-1, at p. 24; ECF Doc. No. 1-2.

[32] ECF Doc. No. 9-1.

[33] ECF Doc. No. 1-2.

[34] Ms. Harrell failed to respond to Defendants' June 12, 2020 memorandum in which they state Ms. Harrell never attempted to serve process on Wells Fargo Bank, N.A. ECF Doc. No. 9, at p. 26.

[35] ECF Doc No. 1, at p. 1; 28 U.S.C. §§ 1334(b), 1452(a); Federal Rule of Bankruptcy Procedure 9027 and Local Rule of Bankruptcy Procedure 9027-1(a).

[36] Fair Credit Extension Uniformity Act 73 P.S. § 2270; Unfair Trade Practices and Consumer Protection Law 73 P.S. §§ 2270, 201-9.2; ECF Doc No. 1-1 at ¶ 27-31; 33-34.

[37] ECF Doc. No 1-1, at ¶ 33-34.

[38] ECF Doc. No. 6-16, at ¶ 28.

[39] ECF Doc. No. 6, at p. 1.

[40] ECF Doc. No. 5, at p. 1; ECF Doc. No. 5-1, at p. 1.

[41] 28 U.S.C. §§ 151, 157, 1334, 1452; Fed. R. Bankr. P. 9027; *see also California Pub. Employees' Ret. System v. WorldCom, Inc.*, 368 F.3d 86, 96-97 (2d Cir. 2004) (discussing the removal

mechanism); *Anstine & Musgrove, Inc. v. Calcasieu Refining Co.*, 436 B.R. 136 (D. Kan. 2010) (holding unanimity is not required for removal of state court action under section 1452).

[42] Fed. R. Bank. Pro. 9027.

[43] *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999) (interpreting 28 U.S.C. § 1446).

[44] ECF Doc. No. 6-18.

[45] ECF Doc. No. 6-1, at p. 19.

[46] Pa. R.C.P. No. 403, 404; ECF Doc. No. 6-18, at p. 2 (using the pagination assigned by the CM/ECF docketing system).

[47] ECF Doc. No. 6-17.

[48] *Id.*

[49] *Id.* As the time to respond to a complaint under the Pennsylvania Rules of Civil Procedure is twenty days, Pa. R.C.P. No. 1026, this places service on or around December 17, 2019.

[50] Even if we found Carrington had been properly served with process in December based on the evidence put forth by the parties, we would not draw such a conclusion about Wells Fargo who Ms. Harrell served in April 2020, so removal is timely in either scenario.

Although Congress did not address removal by later-served defendants in the bankruptcy-specific removal Rule 9027, it did address the rights of later-served defendants in the general removal statute. "Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons . . . to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B).   In *Arnold v. E.W. Bliss Co.*, the plaintiff successfully sought a modification of the automatic stay in the debtor's bankruptcy proceeding so the plaintiff might join the debtor as a defendant in an ongoing lawsuit. *Arnold v. E.W. Bliss Co.*, No. 00-3985, 2001 WL 484072, at *1 (E.D. Pa. Mar. 8, 2001).  The debtor-defendant then removed, and the plaintiff countered the other defendants could have removed the lawsuit under section 1441 six months before at the inception of the lawsuit. *Id.*  Although the defendants removed under Rule 9027, which contains no language about later served defendants, the court held removal timely, "[a]llowing the initially served defendant the choice of whether to remove, but binding that decision on later-joined defendants leads to inequitable results." *Id.* at *2 (internal citations omitted). "Fed. R. Bank. P. 9027 conforms with 28 U.S.C. § 1446(b) which provides the general time limitation for filing a notice of removal pursuant to 28 U.S.C. § 1441. *See* Fed. R. Bank. P. 9027, Advisory Committee Note (stating that Fed. R. Bank. P. 9027 conforms substantially to 28 U.S.C. § 1446)." *Id.* at *2 n. 4.

[51] ECF Doc. No. 9-1.

[52] ECF Doc. No. 1-2.

---

[53] ECF Doc. No. 9, at p. 26.

[54] ECF Doc No. 1, at p. 1; 28 U.S.C. §§ 1334(b), 1452(a); Federal Rule of Bankruptcy Procedure 9027 and Local Rule of Bankruptcy Procedure 9027-1(a).

[55] 28 U.S.C. §§ 1441, 1446, 1452(a); *see also Resorts Int'l*, 372 F.3d at 161-62.

[56] Fed. R. Bankr. P. 9027.

[57] *See Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, 18-1144, 2018 WL 6977710, at *2 (M.D. Pa. Dec. 10, 2018) ("The defendants' motion to have this case transferred to the United States District Court for the Southern District of New York be GRANTED and that the Court decline to rule on the plaintiff's motion to remand or the defendants' motion to dismiss so that these motions may be addressed by the bankruptcy court, which has the greatest interest in, and the greatest familiarity with, the issues raised in this litigation.").

[58] *Hohl v. Bastian*, 279 B.R. 165, 177 (W.D. Pa. 2002) (citing *In re Allegheny Health, Educ. & Research Corp.*, No. 98-25773, 1999 WL 1033566, at *1 (Bankr. E.D. Pa. Nov. 10, 1999)).

We distinguish *Shared Network Users Group, Inc. v. WorldCom Techs., Inc.*, where Judge Bartle decided both the motion to remand and the motion to transfer. 309 B.R. 446 (E.D. Pa. 2004). Addressing competing motions in an adversary proceeding removed under section 1452, Judge Bartle ruled on both the transfer motion and the motion to remand, but the bankruptcy court enjoyed undisputed jurisdiction over the transferred matter pre-confirmation. *Id.* at 450.

[59] 28 U.S.C. §§ 151, 157, 1334.

[60] 28 U.S.C. § 1334(a).

[61] 28 U.S.C. §§ 151, 157, 1334.

[62] U.S. CONST. art. III; *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004).

[63] 28 U.S.C. § 157(d).

[64] *Resorts Int'l*, 372 F.3d at 161-62.

[65] *Id.* at 162 (quoting *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1175 (3d Cir. 1996)).

[66] 1 COLLIER ON BANKRUPTCY P 3.02 at [3][c] (16th 2020).

[67] *Stern v. Marshall*, 564 U.S. 462, 474 (2011) (quoting 28 U.S.C. § 157(b)(1)).

[68] 28 U.S.C. § 157(b)(2).

[69] *In re Combustion Engineering, Inc.*, 391 F.3d 190, 225-26 (3d Cir. 2004).

[70] *Stern*, 564 U.S. at 498-99.

[71] *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S.Ct. 1932, 1937 (2015).

[72] 28 U.S.C. § 157(c)(1).

[73] 28 U.S.C. § 157(b)(1); Fair Credit Extension Uniformity Act 73 P.S. § 2270; Unfair Trade Practices and Consumer Protection Law 73 P.S. §§ 2270, 201-9.2.

[74] ECF Doc. No. 1-1, at ¶ 24.

[75] *Id.* at 18.

[76] ECF Doc. No. 6-1, at p. 17. The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., is an analogous federal statute to the Pennsylvania Fair Credit Extension Uniformity Act. *Brignola v. Home Properties, L.P.*, No. 10-3884, 2013 WL 1795336, at *6 (E.D. Pa. Apr. 26, 2013) ("FCEUA parallels the FDCPA in prohibiting 'unfair or deceptive acts or practices with regard to the collection of debts.'") (quoting 73 Pa. Stat. Ann. § 2270.2).

[77] *E.g.*, *In re King*, No. 10-15870, 2010 WL 3851434 (Bankr. D. Colo. Sept. 24, 2010) (dismissing FDCPA and state law claims for improper debt collection activity post-petition); *In re Vienneau*, 410 B.R. 329 (Bankr. D. Mass. 2009) (declining to exercise jurisdiction over FDCPA claims when the proceeds of the action would not vest in the estate).

[78] *E.g.*, *In re Bernadin*, 610 B.R. 787 (Bankr. E.D. Pa. 2019) (hearing FDCPA claims relating to a proof of claim filed in bankruptcy); *In re Avalos*, 531 B.R. 748 (Bankr. N.D. Ill. 2015) (same).

[79] *Bernadin*, 610 B.R. at 790.

[80] *Id.* at 804.

[81] ECF Doc. No. 6-1, at p. 1.

[82] *See Waleski*, 2018 WL 6977710, at *1.

[83] ECF Doc. No. 6-16 at ¶ 31; *see also* 11 U.S.C. § 541(a)(7) (defining property of the estate to include "[a]ny interest in property that the estate acquires after the commencement of the case."); *Combustion Engineering*, 391 F.3d at 225-26 (including "causes of action owned by the debtor that become property of the bankruptcy estate under 11 U.S.C. § 541(a)" in their definition of non-core, "related to" matters).

[84] 28 U.S.C. § 157(b)(3).

[85] 28 U.S.C. § 157(c)(1).

[86] *Id.*

[87] *Resorts Int'l*, 372 F.3d at 160-62.

[88] *Id.* at 166-67. In *In re Venuto*, Judge Frank applied this "essential inquiry" in the Chapter 13 context. 343 B.R. 120 (Bankr. E.D. Pa. 2006).  Chapter 13 debtors moved to reopen their bankruptcy case to determine whether the debtor had cured a pre-petition mortgage default. *Id.* Judge Frank found (1) the claim related to the bankruptcy case, and (2) he could exercise jurisdiction over the claim under *In re Resorts International*. *Id.* at 125-29, 135.

[89] In *In re Penson Worldwide*, the successor in interest to a debtor brought a post-confirmation adversary proceeding relating to an improper proof of claim filing in a bankruptcy case, along with claims for breach of a pre-petition contract. *In re Penson Worldwide*, 587 B.R. 6, 8 (Bankr. D. Del. 2018). The defendant asked the bankruptcy court to "either to dismiss the matter, enforce a forum selection clause, abstain or otherwise transfer the case . . . ." *Id.* The court held although "[p]ost-confirmation . . . bankruptcy jurisdiction over non-core proceedings narrows; it exists . . . if there is "a close nexus to the bankruptcy plan or proceeding," finding counterclaims by the estate fell under section 157(b)(2)(C) and the bankruptcy court had jurisdiction over the matter. 28 U.S.C. § 157(b)(2)(C); *Penson*, 587 B.R. at 12.

[90] ECF Doc. No. 6-16, at ¶ 28.

[91] ECF Doc. No. 5-1, at p. 8.

[92] 28 U.S.C. § 1334(c)(1) & (2).

[93] *See Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, No. 18-1144, 2018 WL 6977710, at *2 (M.D. Pa. Dec. 10, 2018) (recommending a matter be transferred to the relevant bankruptcy court for their determination on abstention and remand), report and recommendation adopted, No. 18-1144, 2019 WL 123896 (M.D. Pa. Jan. 7, 2019); *George Junior Republic in Pennsylvania v. Williams*, No. 07-228, 2008 WL 763304 (E.D. Pa. Mar. 19, 2008) (same); *Hohl*, 279 B.R. at 177 (citing *In re Allegheny*, 1999 WL 1033566, at *1) (same).

[94] *See Thomason Auto Grp., LLC v. China Am. Co-op. Auto., Inc.*, No. 08-3365, 2009 WL 512195 (D.N.J. Feb. 27, 2009) ("Generally, courts defer to the home court of the bankruptcy to decide the issue of remand or abstention.").

[95] 28 U.S.C. §§ 1334, 1404.

[96] 28 U.S.C. §1409(a).

[97] 28 U.S.C. §157; *In re Assignment of Cases Arising Under Title 11, United States Code*, No. 84-152 (M.D. Fla. July 11, 1984) (Hodges, C.J.).

[98] In *Matter of Hallahan*, a debtor filed a voluntary petition for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the Central District of Illinois. 936 F.2d 1496, 1499 (7th Cir. 1991). A creditor with whom the debtor had conflicted with for years filed a proof of claim in the bankruptcy court and a complaint for nondischargeability, and the debtor objected to the

jurisdiction of the bankruptcy court over the matter and demanded a jury trial.  *Id.* The Court reasoned even if it were a matter which would ordinarily be heard by a jury outside of bankruptcy, the debtor had waived the right by voluntarily submitting to the power of the bankruptcy court and reaping all of the benefits of filing under title 11. *Id.* at 1505.  The court concluded "a [party] to an action at law cannot initiate bankruptcy proceedings, thus forcing creditors to come to bankruptcy court to collect their claims, and simultaneously complain the bankruptcy forum denies him or her a jury trial." *Id.* (citing *In re Johnson*, 110 B.R. 433 (Bankr. W.D. Mo. 1990)).

[99] *Cf. Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 855 (1986) ("[S]eparation of powers concerns are diminished, for . . . just as Congress may encourage parties to settle a dispute out of court or resort to arbitration without impermissible incursions on the separation of powers, Congress may make available a quasi-judicial mechanism through which willing parties may, at their option, elect to resolve their differences. . . . [There is a] degree of judicial control saved to the federal courts, as well as [a] congressional purpose behind the jurisdictional delegation, [a] demonstrated need for the delegation, and [a] limited nature of the delegation."); *Adam v. Saenger*, 303 U.S. 59 (1938) (stating a plaintiff who brings a claim against a defendant in a forum submits to personal jurisdiction of the court with respect to any counterclaim); *In re Exide Techs.*, 544 F.3d 196 (3d Cir. 2008) (internal citations omitted) ("by virtue of the filing of the Proof of Claim you've—the forum [objection] falls away, because, as some of the cases say, once you've done that you've chosen your forum.").

[100] ECF Doc. 7, at p. 1. "Carrington Mortgage Services, LLC, and Wells Fargo Bank, N.A. hereby consent to the entry of the final orders or judgment by the bankruptcy court pursuant to Federal Rules of Bankruptcy Procedures, Rules 9027(e)(3) and 9011."

[101] 28 U.S.C. § 1404.

[102] 28 U.S.C. § 1412; *Pennsylvania by Shapiro v. Think Fin., LLC*, No. 14-7139, 2018 WL 1620981, at *1 (E.D. Pa. Apr. 4, 2018) (citing *Toth v. Bodyonics, Ltd.*, No. 06-1617, 2007 WL 792172, at *1-2 (E.D. Pa. Mar. 15, 2007)) ("While, by its terms, the statute only applies to cases or proceedings 'under title 11,' courts have applied Section 1412 more broadly to "relating to" cases—i.e., to cases that have a conceivable effect on the estate being administered in bankruptcy.").

[103] *See Clark v. Chrysler Grp., LLC*, No. 10-3030, 2010 WL 4486927 (E.D. Pa. Nov. 5, 2010) (transferring a case directly to the bankruptcy court under 28 U.S.C. § 1412).

[104] *See Miller v. Chrysler Grp., LLC*, No. 12-760, 2012 WL 6093836 (D.N.J. Dec. 7, 2012) (transferring a case under 28 U.S.C. 1412 to the district court instead of the bankruptcy court); *Shared Network*, 309 B.R. at 452 (same).

[105] 28 U.S.C. § 1404(a) ("[A] a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.").

[106] *See Thomason Auto Group, LLC v. Ferla*, No. 08-4143, 2009 WL 3491163, at *1 (D.N.J. Oct. 23, 2009) ("[T]ransferring venue to the United States Bankruptcy Court for the Central District of California pursuant to 28 U.S.C. §§ 1404(a) and 1412."); *Tipico Products Co., Inc. v. Dorato Foods, LLC,* No. 06-3329 GEB, 2007 WL 150481 (D.N.J. Jan. 17, 2007) (transferring to the bankruptcy court for the Eastern District of Pennsylvania under 28 U.S.C. § 1404(a)); *Larami Ltd. v. Yes! Ent. Corp.*, 244 B.R. 56 (D.N.J. 2000) (transferring venue to the United States Bankruptcy Court for the District of Delaware under 28 U.S.C. §§ 1404(a) and 1412).

[107] *See In re DBSI, Inc., No. 08-12687 (PJW)*, 2014 WL 4828882, at *3-9 (D. Del. Sept. 25, 2014) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)); *cf. Shared Network*, 309 B.R. at 452 (same).

[108] *Jumara*, 55 F.3d at 879-80.

[109] *Id.* at 879.

[110] *Id.* (citations omitted).

[111] *Id.* at 878-79.

[112] *Krystal*, 232 B.R. at 628 (citations omitted).

[113] *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 729 (D. Del. 2012) (citing *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011)); *see also Krystal Cadillac-Oldsmobile-GMC Truck, Inc. v. Gen. Motors Corp.*, 232 B.R. 622, 628-29 (E.D. Pa. 1999) (citing *Eagle Traffic Control, Inc. v. James Julian, Inc.*, 933 F. Supp. 1251, 1259 (E.D. Pa. 1996)) ("[W]here the plaintiff chooses a forum which is neither his home nor the situs where any of the operative facts of the underlying action is based, his forum selection is entitled to less weight.").

[114] ECF Doc. No. 5, at p. 1.

[115] ECF Doc. No. 6-1, at p. 17-18.

[116] ECF Doc. No. 6-16.

[117] *Jumara*, 55 F.3d at 879 (citations omitted).

[118] 28 U.S.C. §§ 151, 157, 1334; *see also Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998) ("Regarding judgments . . . the full faith and credit obligation is exacting. A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.").

[119] *See* 28 U.S.C. 1334(b); *In re Lehman Bros. Holdings Inc.*, No. 08-13555, 2018 WL 3869606 (Bankr. S.D.N.Y. Aug. 13, 2018), *leave to appeal denied*, No. 18-8986, 2019 WL 2023723 (S.D.N.Y. May 8, 2019) (bankruptcy courts have jurisdiction over claims relating to the bankruptcy case even after confirmation of a plan).

[120] *Shared Network*, 309 B.R. at 452.

[121] ECF Doc. No. 6-16.

[122] ECF Doc. No. 6-1, at p. 18.

[123] *Torres v. Cavalry SPV I, LLC*, 530 B.R. 268, 277 (E.D. Pa. 2015) (quoting *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002)).

[124] *Id.*

[125] *See Brignola*, 2013 WL 1795336, at *6 ("FCEUA parallels the FDCPA in prohibiting 'unfair or deceptive acts or practices with regard to the collection of debts.'") (quoting 73 Pa. Stat. Ann. § 2270.2; citing Fair Debt Collection Practices Act 15 U.S.C. § 1692 et seq.).

[126] *See, e.g.*, *Hanson v. Antio, LLC (In re Hanson)*, 526 B.R. 916 (Bankr. M.D. Fla. 2015); *Cheaves v. Douglas, Knight, and Assoc. (In re Cheaves)*, 439 B.R. 220 (Bankr. M.D. Fla. 2010).

[127] *See, e.g.*, *In re Kraz, LLC*, 582 B.R. 812 (Bankr. M.D. Fla. 2018).